## CONTRIBUTIONS BY COUNTIES, CITIES AND OTHER TAXING DISTRICTS TO THE STATE INSURANCE FUND.

### Common Pleas Court of Hamilton County.

THE CITY OF CINCINNATI, BY WALTER M. SCHOENLE, CITY SOLIC
ITOR OF SAID CITY, V. WILLIAM A. HOPKINS, TREASURER OF
HAMILTON COUNTY, OHIO, ET AL; AND THE BOARD OF EDU-
CATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF CIN-
CINNATI, V. WILLIAM A. HOPKINS, TREASURER OF HAMILTON
COUNTY, OHIO, ET AL.

### Decided, October 15, 1914.

*Constitutional Law—Construction of Section 35 of Article II—Validity
of Section 16 of the Workmen's Compensation Act—Functions of
the Judiciary and of the Legislature—Wisdom of Legislative Acts
Not a Matter for Judicial Review.*

1. Section 35, Article II, of the Constitution of Ohio, which provides, "for the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease occasioned. in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made there-from," etc., vests in the Legislature power to fix the rate to be contributed by employers to such state fund, and the terms and conditions upon which payment shall be made therefrom.

2. Section 16 of the workmen's compensation act (Section 1465-63, General Code), providing that, "the amount of money to be con-tributed by the state itself, and each county, city, incorporated village, school district or other taxing district of the state shall be, unless otherwise provided by law, a sum equal to one per centum of the amount of money expended by the state and for each county, city, incorporated village, school district or other taxing district respectively during the next preceding fiscal year for the service of persons described in subdivision one of section fourteen hereof" is a valid exercise of the power conferred upon the Legislature un-der Section 35, Article II, and is not in conflict with Section 5, Article XII, of the Constitution of Ohio.

*Walter M. Schoenle,* City Solicitor, *Charles A. Groom,* Assistant City Solicitor, and *W. T. Porter,* for plaintiffs.

*T. S. Hogan,* Attorney-General, *James I. Boulger, John A. Deasy* and *Thos. H. Morrow,* contra.

CUSHING, J.

The question presented for determination in the above entitled causes is the constitutionality of Section 1465-63, General Code (Section 16 of the Workmen's Compensation Act):

"The amount of money to be contributed by the state itself, and by each county, city, incorporated village, school district or other taxing district of the state shall be, unless otherwise provided by law, a sum equal to one per centum of the amount of money expended by the state and for each county, city, incorporated village, school district or other taxing district, respectively during the next preceding fiscal year for the service of persons described in subdivision one of section fourteen hereof."

The sections of the Constitution of Ohio, in question are Section 5 of Article XII:

"No tax shall be levied, except in pursuance of law; and every law imposing a tax shall state distinctly the object of the same to which only it shall be applied."

And Section 35 of Article II of the Constitution, which reads as follows:

"For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution, thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom, and taking away any or all rights of action or defenses from employes and employers; but no right of action shall be taken away from any employe when the injury, disease or death arises from failure of the employer to comply with any lawful requirement for the protection of the lives, health and safety of employes. Laws may be passed establishing a board which may be empowered to classify all occupations, ac-

cording to their degree of hazard, to fix rates of contribution to such fund according to such classification, and to collect, administer and distribute such fund, and to determine all rights of claimants thereto.''

It is claimed by plaintiffs in the above causes that the sections of the act in question are unconstitutional on two grounds:

1st.   That no tax shall be levied unless the law imposing the tax states distinctly the object of the same to which it only shall be applied, and that the act in question does not so provide; that the fund raised from taxation, together with the fund raised from contributions by persons or corporations employing more than five persons goes into a common fund and is applied to the payment of all claims under the act; and

2d.   That the Legislature has fixed an arbitrary rate of one per cent. of the amount received by employees of the state and subdivisions thereof, instead of classifying such employees, as is required by the Constitution in cases of private employment.

Counsel for plaintiffs contend that if the state, acting through its Legislature, can fix a rate of one per cent. of the amount of salaries paid to its employees, that it can fix ten or twenty-five or fifty per cent.; that there is no separation of the fund under the law and that money raised from taxes would thus be diverted to purposes not specified in the bill; also, that the cost of conducting the department, amounting to several hundred thousand dollars a year, is paid out of taxes and not made a part of the expense conducting the liability awards, and is not a proper expenditure of taxes; also, that taxes levied in Hamilton county could and would be used to pay beneficiaries in counties other than that for which the taxes were levied; that the provisions of the Constitution above quoted are limitations upon the powers of the Legislature rather than a grant of power.

Many times within the last decade courts have been called upon to consider the constitutionality of acts of the General Assembly, where it seems to me it is a review of the wisdom of the acts rather than a judicial determination of whether it is within the power of the Legislature to pass such acts.   Appeals

to courts seems to have been an easy method of reviewing acts of the Legislature; whether properly I do not say. The judiciary and the Legislature have separate governmental functions to perform and each should exercise the greatest care not to go outside of its own functions.

To ascertain whether a state rightfully exercises a power it is only necessary to see whether by the Constitution that power is conceded to the National Government, or by that Constitution or the Constitution of the state, the power is prohibited to be exercised by the state.

The judicial function is to interpret the law and see that it does not violate any of the provisions prohibited by the Constitution. Courts will not undertake a correction of legislative acts or mistakes. The Legislature is directly answerable to the people for their acts, and it is the duty of the people to keep in close touch with the courts, with the Legislature, and the executive, to see that each performs its function within its own sphere.

It has been well said in speaking of the frequency with which courts have been called upon to review and correct legislative acts:

"The tendency of a common and easy resort to this court function, now lamentably too common, is to dwarf the political capacity of the people, and to deaden its sense of moral responsibility."

I quote again:

"The judiciary today, in dealing with the acts of its co-ordinate legislators, owes to the country no greater or clearer duty than that of keeping their hands off these acts whenever it is possible so to do."

The question then is, is the act in question within the power of the Legislature, and not as was contended in argument that the rate fixed was one per cent. or twenty-five per cent. If the Legislature has the power it can fix the rate at any amount it sees fit, and as the people must pay it, it is for them to select such legislators as will express their will, and not for the courts to exercise a supervision over legislative acts.

If I correctly state the fundamental principles of government, that all power is vested in the state through its Legislature, except such as are prohibited by the Constitution itself or delegated to the Government of the United States, then it seems to me that the only question in this case is: Has the Constitution prohibited the state from enacting the law in question?

In the case of *State, ex rel Watson,* v. *Edmondson, Auditor of Hamilton County,* Judge Johnson of the Supreme Court, in passing on the blind act, held the act unconstitutional on the ground that it was taxing money levied for taxes in Hamilton county, placing it in the state fund, and distributing it to other counties where it was needed for the support of the blind. In that case, as I understand it, the money had been levied by taxes and was in the treasury of Hamilton county for specific purposes.

· Judge Johnson had this to say:

"But there is another material infirmity in the law of 1913. Section 8 of this act requires that on the demand of the state treasurer the treasurers of the respective counties shall transfer and pay over to the state treasurer all moneys in their possession or that may thereafter come into their possession under present levies for the relief of the blind. It is conceded in the cases at bar that the county treasurer has in his possession moneys raised under the act of 1908 which were raised by taxation specifically for the relief of the blind in accordance with the provisions of that law.

"In the consideration of this provision we are confronted with the plain mandate in Section 5 of Article XII of the Constitution that 'No tax shall be levied, except in pursuance of law; and every law imposing a tax shall state, distinctly, the object of the same, to which only, it shall be applied.' The taxes in the county treasuries, which were paid under the levies provided for in the act of 1908, can manifestly be applied only to the objects distinctly stated in the law providing for their levy. The portion of Section 8 of the law of 1913), above referred to, is in direct conflict with Section 5 of Article XII. Each county of the state has raised a fund of its own under the law of 1908 to be applied for the relief of its own blind. Necessarily the amount and the proportionate amount which each county would raise would be different from each of the other counties, and different from its proportion if originally raised by the state for state pur-

poses. To require that this money should be turned over to the state treasurer and used as a part of a fund which belonged to the entire state to be expended for the purposes of the entire state, although the object would be similar, would produce the very inequality and injustice which the Constitution intended to prevent."

The distinction between that case and the case at bar is that the money was already levied in the one case, whereas, in the case at bar, the question is the power of the Legislature to impose a tax that shall be levied.

Counsel for plaintiffs contend that the constitutional provision above quoted is a limitation on the Legislature. I can not agree with this contention. The only limitation found in Section 15 of Article XII is the regulation with reference to private or corporate employment. In these respects the Legislature followed the provisions of the Constitution. But as the Constitution does not mention employees of the state, it seems to me that there is no prohibition in the Constitution with reference to such employment.

The act itself states that the money thus raised from taxes is to go into a general fund and to be used to pay persons coming within the provisions of the Workmen's Compensation Act. The question is one for the people and their Legislature. It is not within the province of a court to review and pass upon the wisdom of legislative acts. The conclusion is that the act in question is constitutional and the demurrers to the petitions must be sustained.